UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CONTINENTAL CASUALTY COMPANY,<br>            Plaintiff | :<br>:<br>: |
| v. | :   Case No. 3:09-cv-00835 (PCD)<br>: |
| JOSEPH A. KRIZ, FIRST AMERICAN TITLE<br>INSURANCE COMPANY, and<br>UNITED GENERAL INSURANCE COMPANY,<br>            Defendants. | :<br>:<br>:<br>:<br>: |

## RULING ON PLAINTIFF CONTINENTAL CASUALTY COMPANY'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Continental Casualty Company ("Continental") filed this action seeking a declaratory judgment that its insured Defendant Attorney Joseph Kriz ("Kriz") is not entitled to coverage under Lawyers Professional Liability Policy No. 287034795 for certain lawsuits initiated against him. Continental also seeks a declaratory judgment that Defendants First American Title Insurance Company ("First American") and United General Title Insurance Company ("United General") are not entitled to indemnification from Continental in connection with any judgments obtained against Kriz in these lawsuits. On September 30, 2009, this Court entered a default judgment against Kriz. On June 30, 2010, Continental moved for summary judgment against First American and United General, which is the subject of the instant ruling. For the reasons stated herein, the motion for summary judgment [Doc. No. 45] is **granted**.

**I. BACKGROUND**[1]

---

[1] This background information is taken from Continental's Local Rule 56 (a)(1) Statement ("Pl.'s Local Rule 56 (a)(1) Stmt.") and accepted as true by Defendants unless otherwise noted. Continental argues that, because Defendants' filing of their Local Rule 56 (a)(2) Statement ("Defs.' Local Rule 56 (a)(2)

1

Continental issued Lawyers Professional Liability Policy No. 287034795 to Kriz for the policy period June 23, 2007 to June 23, 2008 (hereinafter "the policy"). (Pl.'s Local Rule 56(a)(1) Stmt. ¶ 1.) The policy is a claims made and reported policy with a $2,000,000 per claim limit of liability and a maximum aggregate limit of liability of $2,000,000, inclusive of claim expenses. (Id.) It is a renewal of the initial policy that Continental issued to Kriz on June 23, 2006. The policy provides coverage for:

> all sums in excess of the deductible that the **Insured** shall become legally obligated to pay as **damages** and **claim expenses** because of a **claim** that is both first made against the **Insured** and reported in writing to the **Company** during the **policy period** by reason of an act or omission in the performance of **legal services** by the **Insured** or by any person for whom the **Insured** is legally liable[.]

(Id. Ex. A, Section I.A.)

Several actions have been initiated against Kriz in Connecticut Superior Court for which he sought coverage under the policy. In May 2008, Defendant First American filed seven lawsuits against Kriz, who had issued title insurance policies and closing protection letters in First American's name while serving as closing attorney for sales, financings, and refinancings of property.[2] (Id. ¶ 6) In those actions, First American alleges that, in connection with certain closings from 2006 through 2008, Kriz or someone within his employ improperly failed to disburse loan proceeds entrusted to him to pay off prior liens, mortgages and encumbrances. (Id. ¶ 7; Ex. C-I.) Third party Atanas Goranov also filed a complaint against Kriz in May 2008.[3] (Id. ¶ 10.) Mr. Goranov alleges that he purchased property in a transaction in which Kriz acted as

---

Stmt.") was untimely, this Court should disregard their statement and accept Continental's Local Rule 56 (a)(1) Stmt. as true in its entirety. Despite Defendants' untimely filing, the Court has decided to accept and consider their Local Rule 56(a)(2) Stmt.
[2] First Amer. Title Ins. Co. v. Kriz, (Conn. Super. Ct. 2008). (Id. ¶ 6; Ex. C-I.)
[3] Goranov v. Kriz (Conn. Super. Ct. 2008). (Id. ¶ 10.)

counsel for the seller, and that Kriz promised to deliver funds to the seller's mortgagee so that Mr. Goranov would receive free title but never did so. (Id. ¶ 11.) In July 2009, United General, which issued a title insurance policy to Mr. Goranov in connection with the transaction, substituted as the defendant for Mr. Goranov in this action.

On May 30, 2008, Kriz wrote to Continental requesting coverage for the claims arising from the above-referenced lawsuits. (Id. ¶ 16.) In a response to Kriz dated July 2, 2008, Continental agreed to provide coverage for these claims under a reservation of rights. (Id. Ex. T.)

On August 4, 2008, Kriz pled guilty in federal court to conspiracy to commit bank fraud, fraud in loan and credit applications, and mail fraud. (Id. ¶ 12; Ex. L, at 1-4, 5.) Kriz admitted to conspiring to defraud federally insured financial institutions, title companies, lenders, clients and others from January 2005 through March 2008. (Id. ¶ 13.) As part of the fraudulent scheme, he and his co-conspirators retained his clients' mortgage payoff payments by falsely representing that he had paid off the mortgages, and falsified loan applications by altering existing documents and submitting false income information contained in the loan applications. (Id.) Kriz also admitted that, from November 2006 to February 2008, he defrauded Defendant First American by sending it a title insurance policy that represented that a refinancing mortgage was the primary lien on a property, when in fact he had not paid off the first mortgage. (Id. ¶ 15.)

After learning of Kriz's guilty plea, Continental sent Kriz a letter dated April 22, 2009. According to the letter, Continental believed that, pursuant to two separate policy provisions, the policy did not provide coverage for the claims based on the lawsuits initiated by First American and Goranov (hereinafter "Underlying Lawsuits"). (Id. ¶ 17; Ex. U.) The first limiting provision

cited in the letter—Section I.A.3.— imposes certain conditions precedent to coverage. It provides in relevant part that coverage only applies if:

> prior to . . .the inception date of the first policy issued by the **Company** . . . if continuously renewed . . . no **Insured** had a basis to believe that any such act or omission, or **related act or omission**, might reasonably be expected to be the basis of a **claim**[.]

(hereinafter "Prior Acts Provision") (Id. Ex. A, Section I.A.3.) The policy defines related acts or omissions as "all acts or omissions in the rendering of **legal services** that are temporally, logically or causally connected by any common fact, circumstance, situation, transaction, event, advice or decision." (Id. Ex. A, Section III.O.) Continental asserted that, prior to the June 23, 2006 inception date of the initial policy, Kriz was aware of related acts or omissions that might reasonably be expected to be the basis of the claims, and thus the Prior Acts Provision barred coverage. The second policy provision cited in the letter is Exclusion IV.A, which provides that the policy

> does not apply . . . to any **claim** based on or arising out of any dishonest, fraudulent, criminal or malicious act or omission by an **Insured** . . . The **Company** shall provide the **Insured** with a defense of such **claim** until the dishonest, fraudulent, criminal or malicious act or omission has been determined by any trial verdict, court ruling, regulatory ruling or legal admission.

(hereinafter "Dishonesty Exclusion") (Id. Ex. A, Section IV. A.) Continental asserted that the claims for which Kriz sought coverage arose out of Kriz's fraudulent conduct, and thus the Dishonesty Exclusion also barred coverage. (Id. ¶ 17.)

On June 30, 2010, Continental filed this lawsuit seeking a declaratory judgment that Kriz is not entitled to coverage under the policy for the Underlying Lawsuits and that Continental is not required to indemnify First American and United General for any judgments obtained against

4

Kriz in the Underlying Lawsuits. On September 30, 2009, this Court entered a default judgment against Kriz for failure to plead or otherwise defend. (Doc. No. 27.) The Court found that it was reasonable to infer that the Dishonesty Exclusion bars coverage for the First American and Goranov/United General claims because Kriz's guilty plea establishes that the claims are predicated on Kriz's criminal acts. (Id. at 3.) The Court therefore issued a declaratory judgment that Continental has no obligation under the policy to defend or indemnify Kriz in connection with the lawsuits filed by First American and Goranov. (Id. at 5.) Continental now seeks a declaratory judgment that Defendants First American and United General cannot seek indemnification from Continental for judgments obtained against Kriz in the Underlying Lawsuits.

**II. STANDARD OF REVIEW**

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). No genuine issue of material fact exists and summary judgment is therefore appropriate when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A material fact is one that "might affect the outcome of the suit under the governing law," and an issue is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). However, "[c]onclusory allegations will not suffice to create a genuine issue." Delaware & H.R. Co. v. Conrail, 902 F.2d 174, 178 (2d Cir. 1990). The moving party bears the burden of

5

establishing that summary judgment is appropriate. Anderson, 477 U.S. at 250. "A defendant need not prove a negative when it moves for summary judgment on an issue that the plaintiff must prove at trial. It need only point to an absence of proof on the plaintiff's part, and, at that point, plaintiff must 'designate specific facts showing that there is a genuine issue for trial.'" Parker v. Sony Pictures Entm't, Inc., 260 F.3d 100, 111 (2d Cir. 2001) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)).

## III. DISCUSSION

In moving for summary judgment, Continental argues that both the Prior Acts Provision and the Dishonesty Exclusion bar coverage for the claims rendered in connection with the Underlying Lawsuits, and thus First American and United General cannot seek indemnification from Continental for any judgments obtained against Kriz in the Underlying Lawsuits. Because this Court finds that the Dishonesty Exclusion provides a sufficient basis to deny coverage to Kriz and to refuse indemnification to First American and United General, it declines to address whether the Prior Acts Provision also bars coverage.

The Dishonesty Exclusion provides that:

> This Policy does not apply . . . to any claim based on or arising out of any dishonesty, fraudulent, criminal or malicious act or omission by an Insured except that this exclusion shall not apply to personal injury. The Company shall provide the Insured with a defense of such claim unless or until the dishonest, fraudulent, criminal or malicious act or omission has been determined by any trial verdict, court ruling, regulatory ruling or legal admission, whether appealed or not.

(Pl.'s Local Rule 56(a)(1) Stmt., Ex. A, Section IV.A.) The phrase "arising out of" in insurance policies means "'connected with,' 'had its origins in,' 'grew out of,' 'flowed from,' or 'was incident to'" and is interpreted very broadly. Qsp, Inc. v. Aetna Cas. & Sur. Co., 773 A.2d 906, 926 (Conn. 2001) (quoting Hogle v. Hogle, 356 A.2d 172, 174 (Conn. 1975)). In the context of

an insurance policy exclusion, the phrase "signifies that a causal relationship between the injury and the excluded activity, as defined therein, removes the injury from the ambit of the policy's coverage." Holy Trinity Church v. Aetna Cas. & Sur. Co., 571 A.2d 107, 112, n.5 (Conn. 1990).

Because the criminal conduct described in Kriz's guilty plea is strikingly similar in kind to the conduct alleged in the Underlying Lawsuits, it is clear that the claims alleged in the Underlying Lawsuits arise out of the criminal conspiracy to which Kriz pled guilty. In his guilty plea, Kriz admitted to defrauding federally insured financial institutions, title companies, lenders, clients and others from January 2005 through March 2008 in his capacity as a real estate attorney. (Pl.'s Local Rule 56(a)(1) Stmt. ¶ 13.) In particular, he admitted to retaining his clients' mortgage payoff payments by falsely representing that he had paid off the mortgages and by falsifying loan applications (Id.) The Underlying Lawsuits also allege that Kriz, in his capacity as a real estate attorney, fraudulently retained funds entrusted to him to pay off prior liens, mortgages and encumbrances.[4] (Id. ¶¶ 7, 11.)

Moreover, one of the parties that Kriz admitted to defrauding in his guilty plea—First American—is a plaintiff in seven of the Underlying Lawsuits and a defendant in this action. (Id. ¶ 15.) In fact, in June 2008, First American recognized the connection between the conduct alleged in the Underlying Lawsuits and the criminal investigation against Kriz. In a letter dated June 24, 2008, First American's counsel noted that First American had initiated a lawsuit against Kriz based on his improper retention of loan proceeds. The letter also stated that "[w]e have reason to believe that Mr. Kriz engaged in this sort of conduct [of improperly retaining mortgage

---

[4] Although the original complaints in the Underlying Lawsuits alleged only negligence, on October 15, 2009, the plaintiffs in all eight lawsuits amended their complaints to add allegations of fraud and theft against Kriz. (Pl.'s Supp. Local Rule 56(a)(1) Stmt. ¶¶ 1-8.)

proceeds] on nearly a dozen occasions that we are aware of. We are aware of an FBI investigation into Mr. Kriz's conduct." (Id. Ex. J, at 1.)

Defendants make two arguments in support of their position that a genuine issue of fact exists as to whether the Dishonesty Exclusion bars indemnification of any judgments obtained against Kriz in the Underlying Lawsuits. First, Defendants argue that Continental has breached its duty to defend Kriz in the Underlying Lawsuits and, consequently, is estopped from looking "beyond the facts alleged within the four corners of the complaint to claim the loss arose under circumstances which are not covered under the policy." (Def.'s Mem. at 21.) Because the Underlying Lawsuits allege negligence, not fraud, Defendants argue that the Dishonesty Exclusion does not apply. This argument has no merit. Continental initially defended Kriz in the Underlying Lawsuits, subject to a full reservation of rights. (Pl.'s Local Rule 56(a)(1) Stmt. Ex. T.) After learning that Kriz had pled guilty to the criminal charges, however, Continental sought a declaratory judgment that it no longer had an obligation to defend or indemnify Kriz in the Underlying Lawsuits. In granting a default judgment against Kriz, this Court held, "Continental Casualty Company owes no duty to defend or indemnify Joseph A. Kriz under [the policy] in connection with [the Underlying Lawsuits]." (Doc. No. 27, at 5.) Thus, Continental fully complied with its duty under the policy to defend Kriz until his criminal conduct was established by a court ruling or legal admission, and Continental has obtained a judgment determining that it has no duty to defend Kriz. Moreover, even if Continental were precluded from considering "facts alleged beyond the four corners of the complaint," in all eight lawsuits for which Kriz requested coverage, the plaintiffs recently filed amended complaints that added allegations of

8

fraud against Kriz. Thus, even if the Court only considered the allegations in the Underlying Lawsuits, the Dishonesty Exclusion would bar coverage.

Second, Defendants argue that the "Innocent Insured" provision provides an exception to the Dishonesty Exclusion. The "Innocent Insured" provision provides that:

> Whenever coverage under this Policy would be excluded, suspended or lost because of any exclusion relating to criminal, dishonest, fraudulent, or malicious conduct by any person insured hereunder, the **Company** agrees that insurance, as would otherwise be afforded under this Policy, shall be applicable with respect to an **Insured** who did not personally participate or personally acquiesce in or remain passive (including failure to give timely notice) after having knowledge of such conduct . . . ."

(Pl.'s Local Rule 56(a)(1) Stmt. Ex. A, Section V,B.) Because the Underlying Lawsuits allege that Kriz or someone in his employ improperly retained funds, Defendants argue that a question of fact exists as to whether the exception applies to allegations against Kriz's unnamed employees. But Defendants' argument that this policy provision may apply to Kriz's employees is a purely hypothetical scenario because no employee has sought coverage under the policy. Kriz is the only insured named as a defendant in the Underlying Lawsuits, and he is the only insured who has sought coverage under the policy. Therefore, Defendants have raised no question of material fact as to whether the "Innocent Insured" exception to the Dishonesty Exclusion applies.

Because the conduct alleged in the Underlying Lawsuits arises out of the criminal conspiracy that is the basis of Kriz's guilty plea, this Court finds as a matter of law that the Dishonesty Exclusion bars indemnification to First American and United General for any judgments obtained against Kriz in the Underlying Lawsuits.

**IV. CONCLUSION**

For the reasons stated herein, Continental's motion for summary judgment [Doc. No. 45] is **granted**.


So ORDERED.

Dated at New Haven, Connecticut, March  29 , 2011.

                                               /s/

                                      Peter C. Dorsey, U.S. District Judge
                                      United States District Court